## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DERON MCCOY, JR.,**

      **Plaintiff,**

**v.**

**DOUGLAS BURRIS, et al.,**

      **Defendants.**

**Case No. 18-3077-DDC-GEB**

### MEMORANDUM AND ORDER

This matter comes before the court on defendants Douglas Burris, Michael Hamby, Patti Keen, Mike Nickels, Dan Schnurr, and Jennifer Zolman's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 28) and pro se[1] plaintiff DeRon McCoy, Jr.'s Motion to Amend (Doc. 36). For reasons explained below, the court denies plaintiff's Motion to Amend (Doc. 36).[2] The court also grants defendants' motion (Doc. 28).[3]

---

[1]     Because plaintiff proceeds pro se, the court construes his pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But, under this standard, the court does not act as plaintiff's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The court does not construct arguments for plaintiff or search the record. *Id.*

[2]     Plaintiff never filed a reply to support this motion and the time to do so has expired. D. Kan. Rule 6.1(d)(1) ("Replies [to non-dispositive motions] must be filed and served within 14 days of the service of the response.").

[3]     Plaintiff responded to the motion dismiss in just one fashion: his motion seeking leave to amend. The time for filing an actual response to the motion to dismiss has expired. *See* D. Kan. Rule 6.1(d)(2) ("Reponses to motions to dismiss [and] motions for summary judgment . . . must be filed and served within 21 days.").

## I.      Background

Plaintiff filed his Complaint on March 30, 2018 (Doc. 1).  On that same date, the court granted plaintiff leave to proceed in forma pauperis.  Doc. 3.  On August 2, 2018, plaintiff asked the court to direct the Clerk to issue a waiver of service and summons.  Doc. 4.  But, on August 3, 2018, the court denied plaintiff's request as premature and ordered plaintiff to show cause why his Complaint should not be dismissed because it failed to state a claim.  Doc. 5.  When plaintiff failed to respond to the court's Show Cause Order, the court dismissed the case on September 5, 2018.  Docs. 6 & 7.  But the next day, after the court received plaintiff's request for more time to respond, the court vacated its previous orders and reinstated the case, providing plaintiff another opportunity to cure the Complaint's deficiencies, as identified in the Show Cause Order.  Doc. 9. Plaintiff filed an Amended Complaint on September 24, 2018, naming Douglas Burris, Dan Schnurr, M.A. Nickels, M. Hamby, J. Zolam,[4] P. Keen, N. Turner, John Doe (mailroom supervisor), and Richard Roe (storeroom supervisor) as defendants.  Doc. 10 at 5.  Plaintiff never separately responded to the court's Show Cause Order.  But he did attach a "Motion to Amend" to his Amended Complaint, Doc. 10-1, which stated the Amended Complaint was intended to cure the deficiencies in his original Complaint.  This attachment never was docketed as a motion, nor did plaintiff renew his motion seeking a waiver of service and summons.

Almost a year later, on August 14, 2019, the court screened plaintiff's Amended Complaint and directed the Clerk of the Court to serve defendants.  Docs. 11 & 12.  Construing plaintiff's Amended Complaint liberally, the court found plaintiff had fixed some deficiencies identified by the Show Cause Order but still, the court concluded, a *Martinez* Report would help the court determine "the proper processing of [p]laintiff's claims."  Doc. 11 at 5–6.  And the

---

[4]      Although the Amended Complaint names "J. Zolam," defendants appear to concede plaintiff intended to sue Jennifer Zolman.  *See, e.g.*, Doc. 29 at 1 (submitted on behalf "Jennifer Zolman").

court thus directed the appropriate Kansas Department of Corrections ("KDOC") officials to prepare and file a *Martinez* Report.  *Id.* at 6.  On October 1, 2019, the court ordered plaintiff to show cause why certain unserved defendants—N. Turner, John Doe, and Richard Roe— shouldn't be dismissed for lack of service.  Doc. 16.  Plaintiff never responded to the Show Cause Order, so the court dismissed those defendants.  Doc. 17.

KDOC filed a *Martinez* Report on November 21, 2019.  Doc. 20.  After several extensions of time—and one withdrawn motion—defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment on February 27, 2020.  Doc. 28.  In response, plaintiff filed a Motion for Leave to Amend his Amended Complaint on March 18, 2020 (Doc. 32) attaching a proposed Second Amended Complaint.  Defendants opposed plaintiff's motion (Doc. 33). Plaintiff withdrew his motion and filed a new Motion to Amend on April 27, 2020, attaching a proposed Third Amended Complaint.[5]  Doc. 36.  Defendants opposed this new motion as well (Doc. 38).

Plaintiff's proposed Third Amended Complaint names the following defendants from his Amended Complaint:  Douglas Burris, Dan Schnurr, Mike Nickels, Michael Hamby, and Jessica Zolam.[6]  Doc. 36-1 at 1.  It also asks to add claims against new defendants:  Ronald Hamby II, Jenise Moreland, Ryan Patton, and Phillip Patterson.  *Id.*  Defendants argue plaintiff's motion seeking leave to amend is untimely, futile, procedurally defective, and prejudicial.  Doc. 38.

Below, the court's analysis begins with the parties' arguments about whether the court should grant leave to amend.  And, because the court concludes the putative amendment is futile,

---

[5]     Plaintiff purports to withdraw his first Motion to Amend (Doc. 32).  The court thus denies it because it is moot.

[6]     It appears plaintiff intended to name Jennifer Zolman here.  *See, e.g.*, Doc. 29 at 1 (filed on behalf of Jennifer Zolman, among others).

the court next addresses defendants' Motion to Dismiss, or in the alternative, for Summary Judgment.

## II.    Motion to Amend

### A.  Legal Standard

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend his pleadings once as a matter of course in one of two ways:  (A) first, within 21 days after serving the pleading, or (B) second, within 21 days after service of a responsive pleading or motion.  Fed. R. Civ. P. 15(a)(1)(A)–(B).  Outside those periods, any amendment to the pleadings requires the opposing party's written consent or the court's leave, and a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). In contrast, a court should refuse to grant leave to amend on "'a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'"  *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

The decision whether to grant leave to amend is committed to the court's sound discretion.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).  When exercising this discretion, "the court must be mindful that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities."  *Bank Midwest, N.A. v. Millard*, No. 10-2387-JAR-DJW, 2012 WL 4006423, at *1 (D. Kan. Sept. 12, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).  Also, the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  As

this court and other federal courts have explained time and again, "'[t]his discretionary approach of the federal rules fosters a full adjudication of the merits of the parties' disputes within a single comprehensive proceeding.'" *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 184 F.R.D. 363, 368 (D. Kan. 1998) (quoting *Katzman v. Sessions*, 156 F.R.D. 35, 38 (E.D.N.Y. 1994)).  The purpose of Rule 15 is to "'promote as complete an adjudication of the dispute between the parties as is possible.'"  *Id.* (quoting *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986)).

### B.  Discussion

Plaintiff already has amended his Complaint once before.  Doc. 10.  So, plaintiff may amend his Amended Complaint only if the court grants him leave.  Defendants argue the court should deny plaintiff's Motion to Amend because it is (1) untimely, (2) futile, and (3) unduly prejudicial.  As part of their futility argument, defendants contend plaintiff seeks to join parties improperly.[7]  The court considers these arguments, below.

### 1.  Is plaintiff's motion untimely?

Plaintiff filed his Motion to Amend more than two years after his first Complaint. *Compare* Doc. 1 (filed Mar. 30, 2018) *with* Doc. 36 (filed Apr. 27, 2020).  And, he filed his motion more than a year after his Amended Complaint.  *Compare* Doc. 10 (filed Sept. 24, 2018) *with* Doc. 36 (filed Apr. 27, 2020).  Defendants argue plaintiff should have moved to amend as soon as the court dismissed the John Doe defendants in October 2019, or when he received the *Martinez* Report in November 2019.  Doc. 38 at 3.  Defendants contend plaintiff can't explain why he didn't bring his claims earlier.

---

[7]       The parties did not address the other two factors courts consider—bad faith or dilatory motive and failure to cure deficiency by amendments previously allowed—and the court thus concludes these factors do not contribute to the analysis.

Plaintiff asserts his proposed amendment is not untimely because the delay isn't attributable to him.  Doc. 36 at 6.  He argues that his case was paused for almost a year while the court screened his Amended Complaint.  *Id.*  Also, plaintiff contends, he filed his March 18, 2020 motion only a few months after KDOC filed the *Martinez* Report on November 21, 2019, and only about a month after defendants filed their first responsive pleading on February 27, 2020.  *Id.* at 6–7.  His latest motion was filed just over a month after that on April 27, 2020.  Plaintiff contends he seeks leave to amend his Amended Complaint to include information that the *Martinez* Report just recently revealed.  *Id.* at 7.

The court can deny leave to amend when the movant does not have an adequate explanation for undue delay.  *Minter*, 451 F.3d at 1206.  If the movant knew for some time about the facts which he seeks to plead in the putative amendment, the court may deny his request to amend.  *Id.* at 1205–06.  The longer a plaintiff delays, the more likely it is a court will deny leave.  *Id.* at 1205; *see also Steinert v. The Winn Grp., Inc.*, 190 F.R.D. 680, 684 (D. Kan. 2000) ("'Untimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay.'" (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir. 1995))).

Here, plaintiff's motion isn't untimely.  Plaintiff adequately explains the reason for delay.  First, the record shows a significant delay in the case—nearly a year—is attributable to the court, not plaintiff.  *Compare* Doc. 10 (Am. Compl. filed Sept. 24, 2018) *with* Doc. 11 (Mem. and Order dated Aug. 14, 2019).  Absent this pause, the record shows plaintiff moved to amend his Amended Complaint only four months after he received the *Martinez* Report.  Moreover, plaintiff's amendment seeks to add information revealed by the *Martinez* Report.  Doc. 36 at 6–7; *see also Ali v. Dinwiddie*, 291 F. App'x 164, 167–68 (10th Cir. 2008) (concluding the district

court abused its discretion when it denied as untimely plaintiff's request to amend his complaint to add information from the *Martinez* Report when the motion was filed only 20 days after the *Martinez* Report and distinguishing a case where a request to amend a year after the *Martinez* Report was filed was held to be untimely).  The court thus concludes plaintiff's proposed Third Amended Complaint is not untimely.

With this conclusion in hand, the court turns now to defendants' other reasons to deny plaintiff's motion.

### 2.   Is plaintiff's proposed Third Amended Complaint futile?

Next, defendants argue plaintiff's proposed Third Amended Complaint is futile for several reasons.  These reasons include:  (a) new proposed claims against Ronald Hamby II, Jenise Moreland, and Ryan Patton don't relate back to the original filing date and the applicable statute of limitations bars them, (b) plaintiff can't substitute new defendants for the now dismissed John Doe and Richard Roe defendants, (c) the proposed Third Amended Complaint fails to state First Amendment claims, and (d) plaintiff cannot properly join proposed defendant Phillip Patterson.  Doc. 38 at 4–11.  The court addresses each argument, in turn, below.

#### (a)   Plaintiff's new claims against Ronald Hamby II, Jenise Moreland, and Ryan Patton don't relate back to the original filing date and, thus, are barred by the statute of limitations.

*First*, defendants argue plaintiff's Third Amended Complaint seeks to add three new parties—Ronald Hamby II, Jenise Moreland, and Ryan Patton—to this lawsuit.[8]  Doc. 38 at 4–7. But, because plaintiff supplies no evidence that any of these new defendants had "notice that they could potentially be defendants in this suit within" Fed. R. Civ. P. 4(m)'s time period, defendants argue plaintiff's claims against Mr. Hamby, Ms. Moreland, and Mr. Patton don't

---

[8]     Plaintiff also seeks to add Phillip Patterson as a new defendant.  Defendants discuss futility of the proposed claims against Mr. Patterson separately, so he is not included here.

relate back to the original Complaint's date under Fed. R. Civ. P. 15(c).  Doc. 38 at 5.  Nor, defendants assert, can plaintiff show that Mr. Hamby, Ms. Moreland, and Mr. Patton knew that, "but for a mistake concerning identity," plaintiff would have sued them.  *Id.* (internal quotation marks omitted).

Rule 15(c) governs relation back amendments.  Subsection (1) of this rule provides:

An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Plaintiff contends he couldn't discern the identity of these defendants until after the *Martinez* Report named them.  So, plaintiff asserts, he was mistaken "concerning the identity of the proper party."  Doc. 36 at 8.  But Rule 15(c)(1)(C) also requires the newly named party to have received notice of the action within the period provided by Rule 4(m).  So, next, the court considers whether plaintiff satisfies Rule 15(c)(1)(C)'s timely notice requirement.

"'Notice' under Rule 15(c)(1)(C)(i) may be actual or constructive."  *See Silva v. Ekis*, No. 15-3007-CM, 2017 WL 5465531, at *2 (D. Kan. Nov. 14, 2017) (citing *Grider v. Shawnee*

*Mission Med. Ctr., Inc.*, No. 16-2750-DDC-GLR, 2017 WL 2971967, at *3 (D. Kan. July 12, 2017)).  And, Rule 4(m) allows 90 days for service.  If plaintiff can show "good cause" for failing to serve within the prescribed time period, "the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).

Plaintiff filed this lawsuit on March 30, 2018.  Doc. 1.  So, under Rule 4(m) and Rule 15(c), he must show that Mr. Hamby, Ms. Moreland, and Mr. Patton knew by June 28, 2018, that "but for a mistake concerning . . . identity" plaintiff would have sued them.  But, due to no fault by plaintiff, the court delayed screening his Complaint and Amended Complaint several times and did not order service until August 14, 2019—more than a year after plaintiff filed this lawsuit.  *See* Doc. 11 (Mem. & Order dated Aug. 14, 2019 ordering Clerk of the Court to serve plaintiff's Amended Complaint on defendants); Doc. 12 (Service Order dated Aug. 14, 2019). This case's timeline presents a puzzle for the court:  How should the court measure the service period?

Some Circuits have found that the court should toll the service period for an in forma pauperis plaintiff where delayed service is "caused by the court's consideration of his complaint."  *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010) (concluding "delay caused by the court's failure to authorize the issuance and service of process is beyond the control of an *in forma pauperis* plaintiff, [and] such failure constitutes good cause requiring the [90]-day period to be extended"); *see also Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) ("The prisoner may rely on the Marshals Service to serve process, and the Marshals Service's failure to complete service is automatically 'good cause' to extend time for service under Rule 4(m)."); *Paulk v. Dep't of Air Force, Chanute Air Force Base*, 830 F.2d 79, 83 (7th Cir. 1987) (tolling the Rule 15(c) limitations period where court's review under 28 U.S.C. § 1915 caused the delay);

*Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 453–54 (3d Cir. 1996) (holding that

"once a plaintiff submits an *in forma pauperis* complaint within the time provided by the statute

of limitations, and after the § 1915(a) *in forma pauperis* determination is made, the [90] day

[relation back] period of Rule 15(c)(3) for . . . an amendment that changes or adds a party is

suspended while the district court considers the § 1915(d) question").

The court finds the reasoning in these cases persuasive and predicts the Tenth Circuit

would adopt a similar rule.  Thus, the court finds the service period in Rule 4(m) ended on

November 12, 2019—90 days after the court authorized service of plaintiff's Amended

Complaint.  *See Robinson*, 602 F.3d at 609 (tolling the start of the service period until the day the

court authorized service of in forma pauperis prisoner's complaint).

Plaintiff has failed to establish that Mr. Hamby, Mr. Moreland, or Mr. Patton received

notice—actual or constructive—by November 12, 2019.  Indeed, plaintiff fails to make even a

generalized argument about when these new defendants received notice of his lawsuit.  The

court's review of the record reveals Mr. Hamby signed an affidavit on November 19, 2019.  Doc.

20-5 at 1–2 (Hamby Aff. dated Nov. 19, 2019).  But nothing in the record supports a finding that

he received notice of the pending lawsuit any earlier than then.  Thus, the record doesn't support

a finding that either Mr. Hamby, Ms. Moreland, or Mr. Patton received notice of plaintiff's

lawsuit within either 90 days of when his first Complaint was filed, or within 90 days after the

court ordered the Clerk to serve plaintiff's Amended Complaint.  So, the claims against Mr.

Hamby, Ms. Moreland, and Mr. Patton in plaintiff's proposed Third Amended Complaint do not

relate back to the day when the lawsuit was filed.

*Next*, defendants argue that, because plaintiff's new claims against Mr. Hamby, Ms.

Moreland, and Mr. Patton don't relate back to the original Complaint, they are time barred.  Doc.

38 at 5–7.  Plaintiff's claims are subject to a two-year statute of limitations.  The statute of limitations for § 1983 claims "is drawn from the personal-injury statute of the state in which the federal district court sits."  *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citations omitted).  In Kansas, the statute of limitations for personal injury claims is two years.  Kan. Stat. Ann. § 60-513(a)(4); *see also Eikenberry v. Seward Cnty., Kan.*, 734 F. App'x 572, 575 (10th Cir. 2018).  So, the court applies Kansas's two-year statute of limitations to plaintiff's § 1983 claims and turns to the gist of the real disagreement here—when that two-year clock started to run.

Defendants argue that the statute of limitations on plaintiff's proposed § 1983 claims against Mr. Hamby, Ms. Moreland, and Mr. Patton began to accrue on April 4, 10, and July 12, 2017—when plaintiff alleges his legal mail was opened.  Doc. 38 at 6.  Thus, defendants contend, plaintiff must have brought his new claims before July 12, 2019—when the two-year limitations period ended.  *Id.*

Plaintiff concedes that a statute of limitations applies to his § 1983 claim.  Doc. 36 at 8.  But plaintiff contends his claims are not time-barred because he "did not become aware of the facts until the filing of the *Martinez* [R]eport" and so, he "request[s] the court start the statute of limitations for the proposed additional defendants" on the date the *Martinez* Report was filed: November 21, 2019.  *Id.*  He also asks the court to consider the lengthy delay it imposed while screening his Amended Complaint and to "not asses[s] the delays to the fault of the plaintiff." *Id.*

The court construes plaintiff's argument as a request to toll the statute of limitations on his claim.  The court must apply federal law to "determine[ ] the date on which the claim accrues and the limitations period starts to run."  *Mondragón*, 519 F.3d at 1082 (citing *Wallace v. Kato*,

549 U.S. 384, 388 (2007)).  Plaintiff's claims accrued when he knew, or should have known, that his rights were violated.  *Eikenberry*, 734 F. App'x at 576 (citing *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006)).  But state law governs "'any tolling of that period, except that federal law might also allow additional equitable tolling in rare circumstances.'"  *Caballero v. Wyandotte Cnty. Sheriff's Dep't.*, 789 F. App'x 684, 686 (10th Cir. 2019) (quoting *Mondragón*, 519 F.3d at 1082).  In Kansas, courts may equitably toll the statute of limitations only "where a person has been pursuing his or her rights diligently and some 'extraordinary circumstance stood in [the] way and prevented timely filing.'"  *McClain v. Roberts*, No. 109,288, 304 P.3d 364, 2013 WL 3970215, at *3 (Kan. Ct. App. Aug. 2, 2013) (unpublished table opinion) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013)); *see also Caballaro*, 789 F. App'x at 686 ("The Kansas Court of Appeals has suggested in unpublished decisions that the period can be equitably tolled if a plaintiff 'has been pursuing his or her rights diligently and some extraordinary circumstance stood in [the] way and prevented timely filing.'" (quoting *McClain*, 2013 WL 3970215, at *3)).

The court declines to toll the statute of limitations here.  Plaintiff argues merely that some external force—here, the court's delay in ordering a *Martinez* Report—prevented him from discerning the *identity* of persons who injured him.  *See* Doc. 36 at 8 ("[P]laintiff was not aware of *who* caused the injury of his rights . . . until the filing of the Martinez Report . . . ." (emphasis added)).  He argues he could not conduct discovery until after the *Martinez* Report was filed.  But this situation is not an "extraordinary circumstance" preventing plaintiff from timely filing his claims for defendants' purported constitutional violations.  *McClain*, 2013 WL 3970215, at *3 (declining to toll statute of limitations for plaintiff's First Amendment claim where plaintiff complained that prison officials lied about why plaintiff was transferred because plaintiff claimed his transfer was retaliation and he "obviously knew of his transfer when it happened").

Indeed, plaintiff filed this lawsuit within the two-year statute of limitations supplied by Kansas law. *See* Doc. 1 (filed Mar. 30, 2018). And, plaintiff doesn't show how he "diligently" pursued his rights in the meantime. *See Mohamed v. WestCare Ill., Inc.*, 786 F. App'x 60, 61 (7th Cir. 2019) (declining to toll statute of limitations where plaintiff failed to exercise reasonable diligence to discover defendants' names and didn't suggest "that any defendant stopped [plaintiff] from asking the district court to assist him in discovering [defendants'] names"). The statute of limitations accrued for plaintiff's 2017 injuries no later than July 12, 2019—two years after the latest injury attributed to Mr. Hamby, Ms. Moreland, or Mr. Patton. Because plaintiff did not seek to add claims against Mr. Hamby, Ms. Moreland, and Mr. Patton until April 27, 2020,[9] the statute of limitations bars his proposed claims against them.

### (b) May plaintiff substitute new defendants for the now-dismissed John Doe defendants?

Plaintiff raises an alternative basis for adding Mr. Hamby, Ms. Moreland, and Mr. Patton as defendants. He contends he is substituting these proposed defendants for the previously identified "John Doe" and "Richard Roe" defendants. Doc. 36 at 9. But the court dismissed the "John Doe" and "Richard Roe" defendants after plaintiff never responded to its Show Cause Order. *See* Doc. 17. And, even if the court hadn't dismissed the Doe defendants, the statute of limitations would bar plaintiff's claims because substituting "a named defendant[] for [an] original unknown 'John Doe' defendant[] amount[s] to adding a new party." *Garrett v. Fleming*, 362 F.3d 692, 696–97 (10th Cir. 2004) (holding that plaintiff's amended complaint did not relate back to the original filing date when plaintiff substituted a person's name for "John Doe" because such an amendment does not remedy "a formal defect of the type Rule 15(c)(3) was

---

[9]     Even if the court chose to accept plaintiff's now withdrawn Motion to Amend (Doc. 32), the statute of limitations still would bar his claims against Mr. Hamby, Ms. Moreland, and Mr. Patton.

meant to address").  And so, a plaintiff still must satisfy Rule 15(c)'s requirements for relation back.  *Id.*  As explained above, here plaintiff hasn't satisfied Rule 15(c).  "[A] plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party'" under Rule 15(c).  *Id.*  The court rejects plaintiff's Doe-based argument.

### (c)  Does plaintiff's proposed Third Amended Complaint state a First Amendment claim against Mr. Hamby, Ms. Mooreland, or Mr. Patton?

Plaintiff purports to add claims against Mr. Hamby, Ms. Moreland, and Mr. Patton in their individual and official capacities.  Doc. 36-1 at 1 (Proposed Third Am. Compl.).  Defendants contend the proposed Third Amended Complaint fails to state plausible § 1983 claims.  Doc. 38 at 8–10.  The court examines defendants' futility argument, separately, below.

### i.   Plaintiff's proposed official capacity claims against Mr. Hamby, Ms. Moreland, and Mr. Patton are barred by the Eleventh Amendment.

Because plaintiff proceeds in forma pauperis, 28 U.S.C. § 1915(e)(2) requires the court to screen the party's complaint.  The court also has an independent obligation to satisfy itself that subject matter jurisdiction is proper.  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  The court has discretion "to raise an issue of Eleventh Amendment immunity sua sponte[.]"  *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012) (citations omitted).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any state of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).

Here, the court lacks subject matter jurisdiction over plaintiff's official capacity claims because the Eleventh Amendment bars them.  The Eleventh Amendment "accord[s] states the respect owed them as joint sovereigns," by granting immunity to nonconsenting states from suits in federal court.  *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted).  "Eleventh Amendment immunity applies . . . whether a plaintiff seeks declaratory or injunctive relief, or money damages."  *Id.* (citations omitted).  Also, the Amendment's immunity extends to state entities who are considered "'arm[s] of the state.'"  *Id.* at 1253 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  And, it also applies to "a suit against a state official in her or her official capacity . . . ."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  KDOC is an arm of the state.  *Courtney*, 466 F. App'x at 699–701 (collecting cases and concluding KDOC is an agency or department of the State of Kansas entitled to sovereign immunity).  Mr. Hamby, Ms. Moreland, and Mr. Patton are KDOC employees.  Unless some exception applies, they thus are entitled to Eleventh Amendment immunity for the claims asserted against them in their official capacity.

Eleventh Amendment immunity bars suits in federal court against a state "unless the state waives immunity or Congress has validly abrogated immunity."  *Nelson v. Geringer*, 295 F.3d 1082, 1096 (10th Cir. 2002) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996)).  Neither exception applies here.  Kansas has not waived immunity, and the Supreme Court has held that Congress did not abrogate state sovereign immunity when it enacted 42 U.S.C. § 1983.  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195–96 (10th Cir. 1998).  Thus, Eleventh Amendment immunity bars plaintiff's official capacity § 1983 claims against Mr. Hamby, Ms. Moreland, and Mr. Patton.  *See Ellis*, 163 F.3d at 1196 (holding that Eleventh

Amendment immunity barred plaintiffs' § 1983 claims "against Kansas and its state agencies in the federal courts").

> ii.    **Plaintiff's proposed individual capacity claims against Mr. Hamby, Ms. Moreland, and Mr. Patton fail to state a claim.**

To state a claim under § 1983, plaintiff must allege that:  (1) "some person has deprived him of a federal right" and (2) "the person who has deprived him of that right acted under color of state or territorial law."  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted).  Here, plaintiff's proposed Third Amended Complaint alleges that Mr. Hamby, Ms. Moreland, and Mr. Patton acted under color of state law when they opened—or failed to prevent others from opening—plaintiff's legal mail.  Doc. 36-1 at 2–3.  Specifically, plaintiff alleges defendants violated his First Amendment rights and Fourteenth Amendment due process right to privacy when:  (1) Mr. Hamby opened and read plaintiff's legal mail—consisting of "copies of motions that were filed" in another case—on April 5, 2017, and revealed related information he learned to another person; (2) Mr. Patton opened and read "legal correspondence" from plaintiff's attorney on July 14, 2017; and (3) Ms. Moreland and Mr. Patton failed to act, train, or supervise others adequately to prevent them from reading plaintiff's legal mail.  Doc. 36-1 at 4, 8, 11–12.  Because plaintiff alleges all three proposed defendants acted under color of state law, the court considers whether the proposed Third Amended Complaint alleges the proposed defendants violated one of plaintiff's federal rights.

Plaintiff contends defendants violated his First and Fourteenth Amendment rights when they opened his legal mail outside of his presence.  The Supreme Court has recognized that "the First Amendment entitles a prisoner to receive and send mail . . . ."  *Hudson v. Palmer*, 468 U.S. 517, 547 (1984) (Stevens, J., concurring).  Similarly, the Fourteenth Amendment entitles a prisoner to reasonable access to the courts.  *Id.*  "It is settled that an inmate's legal mail may be

opened by prison officials only in the presence of the inmate." *Bledsoe v. Biery*, 814 F. Supp. 58, 59 (D. Kan. 1993). "The privileged treatment accorded legal mail stems from its importance in protecting inmates' right of access to the courts." *Id.* But, isolated incidents of opening a prisoner's legal mail are insufficient to support a constitutional violation unless there is "evidence of improper motive or resulting interference with [plaintiff's] right to counsel or access to the courts[.]" *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Haston v. Galetka*, 799 F. Supp. 1129, 1132 (D. Utah 1992) (citing *Maschner* and concluding two incidents where prison employees opened plaintiff's legal mail didn't rise to a "pattern" of improper behavior absent a showing of improper motive or interference with plaintiff's right to counsel or court access); *Bagguley v. Barr*, 893 F. Supp. 967, 972–73 (D. Kan. 1995) (finding that "three envelopes [that] were opened in violation of the applicable federal regulations . . . [did] not rise to the level of a constitutional violation").

Plaintiff's proposed Third Amended Complaint fails to plead adequate facts to state a claim against Mr. Hamby, Ms. Moreland, or Mr. Patton. The following paragraphs explain why.

*First*, plaintiff alleges that Mr. Hamby opened and read his legal mail on April 5, 2017. Doc. 36-1 at 4. Plaintiff contends Mr. Hamby knew two of the defendants in one of plaintiff's other lawsuits, and that he knew reading plaintiff's mail "was breaking the plaintiff['] s constitutional rights." *Id.* He alleges Mr. Hamby read his mail to gather information about the case against the defendants who Mr. Hamby personally knew. *Id.* Plaintiff concedes the legal mail purportedly opened by Mr. Hamby contained "copies of motions that were filed" in one of plaintiff's other cases. *Id.* "[C]opies of unsealed documents filed of record in state [or federal] court are not afforded any special protection because they are public documents available for all to read." *Green v. Denning*, No. 06-3298-SAC, 2011 WL 3880882, at *12 (D. Kan. Aug. 31,

2011).  And, plaintiff never alleges "anything done by [Mr. Hamby] interfered with his communication with counsel or his access to the courts," or that "his ability to pursue any legal claim was hindered" because Mr. Hamby opened his mail.  *Id.*  Nor does plaintiff allege facts tending to show Mr. Hamby acted with an "improper motive."  Accepting all of plaintiff's allegations as true—as the court must at this stage—plaintiff merely has alleged that Mr. Hamby opened and read filed, public motions, unentitled to "special protection."  Plaintiff never alleges Mr. Hamby used this information—or even intended to use this information—to affect plaintiff's interests adversely.  Plaintiff's proposed claim against Mr. Hamby is futile.

*Second*, plaintiff's proposed Third Amended Complaint pleads few facts about Mr. Patton.  It alleges only that Mr. Patton opened and read "legal correspondence" from plaintiff's counsel on July 14, 2017.  Doc. 36-1 at 7–8.  But the proposed Third Amended Complaint never alleges Mr. Patton had an "improper motive" or that this incident interfered with plaintiff's right to counsel or access to court.  *See Maschner*, 899 F.2d at 944 (explaining "[i]solated incidents of opening a prisoner's legal mail are insufficient to state a constitutional violation unless there is "evidence of improper motive or resulting interference with [plaintiff's] right to counsel or access to the courts").  Plaintiff's proposed claim against Mr. Patton is futile.

*Last*, the proposed Third Amended Complaint alleges Ms. Moreland, Mr. Patton, and others failed to prevent others from opening and reading plaintiff's legal mail, or directed others under their supervision to open plaintiff's mail.  Doc. 36-1 at 11.  And, it alleges, they (and others) failed to train and supervise employees, which "[led] to plaintiff[']s rights being violated in the form of opening and reading plaintiff[']s incoming properly identified legal mail . . . ."  *Id.* at 11–12.  Plaintiff contends Ms. Moreland was the mailroom supervisor and knew plaintiff's legal mail was being opened.  *Id.* at 3, 12.  But plaintiff supplies no dates or other specific facts

to support his claim against Ms. Moreland and Mr. Patton.  The court construes it as a failure to train or supervise claim.

To prevail on his § 1983 claims, "plaintiff must show the defendant personally participated in the alleged violations[.]"  *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). But "conclusory allegations are not sufficient to state a constitutional violation."  *Id.* (citing *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981)).  To attach liability to a supervisor, plaintiff must show "'a deliberate, intentional act by the supervisor to violate constitutional rights.'"  *Id.* at 995 (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)).  Here, plaintiff could satisfy this standard if he plausibly alleges Ms. Moreland or Mr. Patton "personally directed" the alleged constitutional violations or "had actual knowledge" of the violations and allowed them to continue.  *Id.* (citing *Woodward*, 977 F.2d at 1400).

Plaintiff's proposed claim against Ms. Moreland and Mr. Patton falls short.  He supplies no more than conclusory allegations that Ms. Moreland and Mr. Patton are liable for a failing to train or supervise theory.  *See, e.g.*, Doc. 10 at 17 (alleging defendants "intentionally and malicious and with callous disregard violated the plaintiff[']s rights by failing to act to stop the opening and reading of the plaintiff's incoming correspondence from his attorneys").  But conclusions can't carry the day.  *Jenkins*, 81 F.3d at 994; *Carter v. United States*, 667 F. Supp. 2d 1259, 1263 (D. Kan. 2009) (noting that although the court must assume that the complaint's factual allegations are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation" (citation and internal quotation marks omitted)); *see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim for relief]." (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The court concludes plaintiff's proposed supervisor liability claims against Ms. Moreland and Mr. Patton are futile.

### iii.    Summary

In sum, plaintiff's proposed claims against Mr. Hamby, Mr. Moreland, and Mr. Patton are futile for two reasons.  *First*, the applicable statute of limitations bars the claims.  *Second*, and independently, the allegations fail to state a claim.

### (d) Do Fed. R. Civ. P. 18 and 20 allow plaintiff to join Phillip Patterson as a defendant?

Finally, defendants argue, plaintiff's proposed claims against Phillip Patterson are procedurally futile because plaintiff cannot properly join this new defendant under Fed. R. Civ. P. 18 or 20.  Doc. 38 at 10.  They argue plaintiff's proposed claims against Mr. Patterson arise from a different set of facts because Mr. Patterson's alleged constitutional violations occurred at a different Kansas prison facility more than two years after plaintiff's original claims.  *Id.* at 10–11.  The court agrees with defendants.  Mr. Patterson's joinder is not warranted under Fed. R. Civ. P. 18 and 20.

Rule 20 governs permissive joinder of parties.  It provides:

(2) ***Defendants***.  Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  Rule 18(a) governs joinder of claims and provides:  "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  While the Rules of Civil Procedure generally encourage joinder in the name of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different

parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). The Seventh Circuit held in *George v. Smith* that, under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." 507 F.3d 605, 607 (7th Cir. 2007) (concluding that under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence to joinder rules is especially important in prisoner suits. It prevents "the sort of morass [that a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from dodging the fee obligations and three strikes provisions of the Prison Litigation Reform Act. *Id.* (noting that Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, Rule 18(a) permits plaintiff to bring multiple claims against a single defendant. And, under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence if the claims share a common issue of law or fact. But, he cannot bring multiple claims against multiple defendants unless he satisfies the nexus prescribed for all defendants by Rule 20(a)(2). Plaintiff's proposed Third Amended Complaint here fails to honor that standard.

Plaintiff has failed to establish that his claim again Mr. Patterson arose from the same "transaction [or] occurrence" or shares common questions of fact with the claims asserted against existing defendants. Fed. R. Civ. P. 20(a)(2)(A). Indeed, plaintiff never alleges where Mr. Patterson was employed during the time his alleged actions occurred, or that Mr. Patterson acted in concert with the other defendants. He alleges that between October 2018 and March

2019, four items of his legal mail were opened outside his presence.  Doc. 36-1 at 8.  Plaintiff complained about these instances to Mr. Patterson.  *Id.* at 8–9.  He asserts a § 1983 claim against Mr. Patterson for failing to stop the opening of his legal mail.  *Id.* at 11–12.  But the materials attached to his proposed Third Amended Complaint indicate Mr. Patterson's alleged violations occurred while plaintiff was held at El Dorado Correctional Facility, or Lansing Correctional Facility, while the 2017 alleged violations occurred at Hutchinson Correctional Facility.  *See* Doc. 36-2 at 30–42 (various grievances filed from El Dorado Correctional Facility and Lansing Correctional Facility between 2018 and 2019).

It is not enough for plaintiff to allege that the current defendants opened his legal correspondence and that he alleges Mr. Patterson did the same over a year later at a different facility.  *Golston v. Correct Care Sols.*, No. 12-3046-SAC, 2012 WL 2119983, at *3 (D. Kan. June 11, 2012) ("Incidents that occurred at different facilities are unrelated unless the two incidents were caused by the same person or arose from the same transaction or set of transactions."); 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1653 (3d ed. Supp. Apr. 2020) ("[I]t has been held that joinder will not be allowed based solely on the assertion that the defendants committed the same type of violations in the same way.").  Joinder is unwarranted under Fed. R. Civ. P. 18 and 20, and so, plaintiff's proposed claims against Mr. Patterson procedurally are futile.

### 3.   Is plaintiff's motion unduly prejudicial to defendants?

Defendants also argue plaintiff's proposed Third Amended Complaint is unduly prejudicial to them for several reasons.  Doc. 39 at 12–13.  For example, they argue plaintiff "has been aware of the relevant facts and actors for almost three years and has possessed the *Martinez* Report for [four] months."  *Id.* at 12.  And, because plaintiff asks to add new claims against a

new defendant at a new facility, defendants argue he would delay the action's progress until an

updated *Martinez* Report is prepared.  But, because the court already has concluded plaintiff's

proposed Third Amended Complaint is futile, the court does not find this factor persuasive.  In

short, the court does not rely on undue prejudice as a reason for denying plaintiff's motion.

### 4.  Conclusion

In sum, while plaintiff's proposed Third Amended Complaint is not untimely or unduly

prejudicial to defendants, it is futile.  Its claims against Ronald Hamby II, Jenise Moreland, and

Ryan Patton don't relate back to the original filing date and are barred by the applicable statute

of limitations.  Plaintiff can't circumvent this conclusion by substituting new defendants for the

now dismissed John Doe defendants.  The proposed Third Amended Complaint also fails to state

plausible § 1983 claims against Mr. Hamby, Ms. Moreland, and Mr. Patton.  And, finally,

plaintiff cannot properly join his claims against proposed defendant Phillip Patterson.  For all

these reasons the court denies plaintiff's Motion to Amend (Doc. 36).

### III.   Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 28)

Defendants have moved to dismiss plaintiff's existing Amended Complaint under Fed. R.

Civ. P. 12(b)(1) and 12(b)(6) (Doc. 28).[10]  To the extent the court does not dismiss plaintiff's

claims under their Rule 12 motion, defendants alternatively move for summary judgment.  *Id.*

For reasons explained below, the court grants defendants' motion to dismiss under 12(b)(1) for

plaintiff's official capacity claims seeking money damages, declaratory judgment, and

---

[10]     Plaintiff never responded to defendants' Motion to Dismiss, or in the Alternative, for Summary
Judgment (Doc. 28).  Instead, he elected to move to amend his Amended Complaint (Doc. 36).  Although
plaintiff proceeds pro se, his status as a pro se litigant does not relieve him of the obligation to follow the
court's rules.  *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly
insisted that pro se parties follow the same rules of procedure that govern other litigants." (citations and
internal quotation marks omitted)).

prospective injunctive relief.  The court then turns to plaintiff's other claims applying a summary judgment analysis.

### A.  Motion to Dismiss

#### 1.  Legal Standard:  Fed. R. Civ. P. 12(b)(1)

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya*, 296 F.3d at 955 (citation omitted).  Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. §§ 1331, 1332.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso*, 495 F.2d at 909 (citation omitted).  Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Also, standing to sue is elemental to subject matter jurisdiction.  "'Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—*i.e.* where the controversy is no longer live and ongoing.'" *Robertson v. Biby*, 719 F. App'x 802, 803–04 (10th Cir. 2017) (quoting *Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 568 (10th Cir. 2015)); *see also Rivera v. IRS*, 708 F. App'x 508, 513 (10th Cir. 2017) ("Under Article III of the Constitution, standing is a prerequisite to subject matter jurisdiction that [courts] must address, sua sponte if necessary, when the record reveals a colorable standing issue." (citing *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012))).

### 2.   Discussion

Here, plaintiff alleges that Mr. Burris, Mr. Schnurr, Mr. Nickels, Mr. Hamby, Ms.

Zolman, and Ms. Keen—acting in both their official and individual capacities—violated his First

Amendment and Fourteenth Amendment rights by opening his legal mail outside of his presence,

or by failing to stop others from doing so.  *See generally* Doc. 10.  Plaintiff seeks one dollar in

nominal damages and $250,000 in punitive damages.  *Id.* at 19.  Plaintiff also seeks a

retrospective declaratory judgment that "the acts and omissions contained within this complaint

violated plaintiff[']s rights."  *Id.*  And, plaintiff seeks a "permanent injunction directing

K.D.O.C. officials to stop opening [his] mail outside his presence and to stop reading [his]

properly identified incoming legal mail."  *Id.*  Defendants' motion argues that the Eleventh

Amendment bars plaintiff's claims for monetary damages and a retrospective declaratory

judgment asserted against defendants in their official capacities.  Defendants also argue

plaintiff's claim seeking injunctive relief is moot because the Hutchinson Correctional Facility

("HCF") no longer houses him, where the alleged acts and omissions occurred.  Doc. 38 at 10.

The court agrees with defendants.  As discussed above with plaintiff's motion to amend,

the Eleventh Amendment bars federal courts from awarding money damages or a declaratory

judgment on official capacity claims against a state officer.  *See, e.g.*, *Ellis*, 163 F.3d at 1196

("[T]he Eleventh Amendment bars federal court jurisdiction over . . . a state official acting in her

official capacity in a suit for damages . . . ."); *White v. Colorado*, 82 F.3d 364, 366 (10th Cir.

1996) (holding that Eleventh Amendment barred § 1983 claims against state prison officials sued

in their official capacities "seeking money damages and a declaratory judgment").

Also, public records show that HCF no longer houses plaintiff.  And, even though the

Eleventh Amendment doesn't bar § 1983 claims seeking prospective injunctive relief to end a

continuing violation of federal law, plaintiff's claims against HCF employees are moot now that HCF no longer houses him. *See White*, 82 F.3d at 366 (holding plaintiff's § 1983 claims seeking prospective injunctive relief were moot because he was released on parole); *LaFaut v. Smith*, 834 F.2d 389, 390, 95 (4th Cir. 1987) (holding plaintiff's § 1983 claims moot because he was transferred to another correctional facility and court's decision could no longer affect the rights of the parties where there was "no suggestion that the wrong could or would be repeated" be defendant).

In sum, the Eleventh Amendment bars plaintiff's request for money damages and declaratory judgment against defendants in their official capacities. And, because plaintiff no longer resides at HCF, his claims for prospective injunctive relief are moot. The court thus dismisses plaintiff's official capacity claims without prejudice because it lacks subject matter jurisdiction over them.

### B. Motion for Summary Judgment

Defendants move for summary judgment against plaintiff's remaining claims. These claims fall into two categories: (1) individual capacity claims against Mr. Hamby, Mr. Schnurr, Ms. Keen, and Ms. Zolman for interfering with his legal mail in violation of the First and Fourteenth Amendment, and (2) individual capacity claims against Mr. Burris, Mr. Nickels, and Mr. Schnurr for failing to train or supervise. Doc. 10 at 15–18. For reasons explained below, the court grants defendants' motion (Doc. 28).

### 1.  Uncontroverted Facts

The following facts are taken from the Amended Complaint, defendants' motion, or the *Martinez* Report[11] and are uncontroverted for purposes of defendants' summary judgment motion.[12]

Plaintiff lawfully is in the custody of KDOC.  Doc. 20-1 (KASPER Internal KDOC – Offender Population Search).  During the period alleged in the Amended Complaint, KDOC housed plaintiff at HCF.  *Id.* at 3.

Defendant Dan Schnurr is the HCF warden.  Doc. 20-7 at 1 (Schnurr Aff. ¶ 1).  While HCF housed plaintiff, KDOC employed the following people:  (1) Patti Keen as a Senior Administrative Assistant responsible for supervising the mailroom (Doc. 20-11 at 1) (Keen Aff. ¶ 1); (2) Michael Hamby as a Storekeeper Specialist (Doc. 20-4 at 1) (Hamby Aff. ¶ 1); (3) Jennifer Zolman as a Storekeeper Specialist (Doc. 20-6 at 1) (Zolman Aff. ¶ 1); (4) Mike Nickels as a Unit Team Manager (Doc. 20-8 at 1) (Nickels Aff. ¶ 1); (5) Doug Burris as a Corrections

---

[11]     A *Martinez* report is "a court-authorized investigation and report by prison officials."  *Hall*, 935 F.2d at 1109.  On summary judgment, a *Martinez* report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence."  *Id.* at 1111.  But "absent valid challenge," the *Martinez* report "may be treated as providing uncontroverted facts."  *Hartz v. Sale*, 687 F. App'x 783, 785 (10th Cir. 2017).

[12]     As noted above, plaintiff never responded to defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 28).  Instead, he elected to move to amend his Amended Complaint (Doc. 36).  Although plaintiff proceeds pro se, his status as a pro se litigant does not relieve him of the obligation to follow the court's rules.  *See Nielsen* 17 F.3d at 1277 ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (citations and internal quotation marks omitted)).  Also, plaintiff knows about the federal and local rules governing summary judgment practice because defendants served him with a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," as our local rule, D. Kan. Rule 56.1(f), requires.  Doc. 30.  The Notice informed plaintiff that if he "d[id] not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendants, the court may accept defendants' facts as true . . . ."  *Id.* at 2; *see also* D. Kan. Rule 56.1(f).  Since plaintiff has not responded to defendants' motion, the court accepts defendants' factual statements as uncontroverted.  *See* D. Kan. Rule 56.1(a).

Manager and the Secretary of Corrections's "designee for review and disposition of inmate grievance appeals" (Doc. 20-3 at 1) (Burris Aff. ¶ 1).

HCF directs incoming mail to the mailroom.  Doc. 20-7 at 1 (Schnurr Aff. ¶ 3).  HCF General Order 16-103(VI)(C)(3) outlines HCF's legal mail procedures.  Doc. 20-13 at 5–6.  It provides:

> Inmate mail which is clearly identified as legal, official, or privileged and meets the KDOC definition of legal, official, or privileged mail shall be sorted unopened into the appropriate Unit Team post office box for distribution by the unit's counselor.

*Id.* at 6.  If legal mail arrives at the mailroom, employees are trained to open the envelope in front of the receiving inmate.  Doc. 20-11 at 1 (Keen Aff. ¶ 5).  An employee inspects the contents, and then delivers the legal mail to the inmate.  *Id.*

HCF directs packages to the storeroom.  Doc. 20-7 at 1 (Schnurr Aff. ¶ 3).  The storeroom is "completely separate from the HCF mailroom," in a different building, approximately half a mile from the mailroom.  Doc. 29-2 at 1 (Zolman Decl. ¶ 4).  "The storeroom virtually never receives mail."  Doc. 20-4 at 1 (Hamby Aff. ¶ 4); *see also* Doc. 20-6 at 1 (Zolman Decl. ¶ 4) (noting July 12, 2017 was the first time she had seen legal mail in the storeroom).  HCF directed storeroom employees to "open all packages and inspect them for contraband."  Doc. 20-6 at 1 (Zolman Decl. ¶ 3); *see also* Doc. 20-4 at 1 (Hamby Aff. ¶ 3).

### The April 5, 2017 Package

Plaintiff alleges HCF staff opened his legal mail on April 5, 2017.[13]  Doc. 10 at 9–10.  Plaintiff alleges Mr. Michael Hamby signed for this package.  *Id.* at 9.  But the undisputed facts reveal the HCF employee responsible for this incident is not a party to the Amended Complaint.

---

[13]     Plaintiff alleges his attorney mailed a package to him on April 4, 2017.  Doc. 10 at 9–10, 21.  But, defendants testify that they received the package on April 4, 2017.  *See, e.g.*, Doc. 20-4 at 1 (Hamby Aff. ¶ 8).  Nevertheless, it appears from the record that plaintiff's package arrived at HCF on April 5, 2017.

*See* Doc. 20-4 at 1 (Hamby Aff. ¶ 8) (noting Michael Hamby didn't sign for packages on April 4, 2017 and that if an "R. Hamby" signed, then Ronald Hamby, another storeroom employee, is responsible); *see also* Doc. 10 at 21; *supra* Part II.B.2 (denying plaintiff's Motion to Amend to add claims against Ronald Hamby). Ms. Keen testified that on April 6, 2017 she received a resealed package in the mailroom that had been opened by the storeroom, but denies reading the contents of the package. *See* Doc. 20-11 at 1–2 (Keen Aff. ¶¶ 2, 3, 7–9).

### The April 10, 2017 Package

On April 10, 2017, Federal Express ("FedEx") delivered a package addressed to plaintiff to the HCF storeroom. Doc. 20-4 at 1 (Hamby Aff. ¶¶ 2–5); Doc. 10 at 7 (Am. Compl. ¶ 16); *see also* Doc. 10 at 23. Michael Hamby signed for the package but wasn't expecting to receive legal correspondence in the package room. Doc. 20-4 at 1 (Hamby Aff. ¶¶ 2, 4). Mr. Hamby opened the package, but when he discovered it contained legal documents, he returned the documents to the envelope and sought his supervisor's guidance about where to direct the package. *Id.* (Hamby Aff. ¶ 5). Mr. Hamby never notified Warden Schnurr about this incident. *Id.* (Hamby Aff. ¶ 6). The package was rerouted to the mailroom. Doc. 20-11 at 1 (Keen. Aff. ¶ 3). When the mailroom received the package, employees processed it like other legal mail. *Id.* at 2 (Keen Aff. ¶ 7). Mailroom staff did not read the package's contents. *Id.* (Keen Aff. ¶ 8).

### The July 12, 2017 Package

On July 12, 2017, FedEx delivered another package addressed to plaintiff to HCF's storeroom. Doc. 10 at 13–14, 25. Ms. Zolman signed for the package and opened it. Doc. 29-2 at 1 (Zolman Decl. ¶ 5). Ms. Zolman had not received legal mail in the storeroom before and didn't notice the package contained legal materials until after she had opened it. *Id.* (Zolman Decl. ¶¶ 6–7). After consulting her supervisor, Ms. Zolman resealed the package and forwarded

it to the mailroom for processing.  Doc. 20-6 at 1 (Zolman Aff. ¶¶ 4–5).  Ms. Zolman never read

the contents of plaintiff's package.  *Id.* (Zolman Aff. ¶ 5).  When the mailroom received the

package, employees processed it like other legal mail.  Doc. 20-11 at 2 (Keen Aff. ¶ 7).

Mailroom staff did not read the package's contents.  *Id.* (Keen Aff. ¶ 8).

### 2.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine

dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(a).  When it applies this standard, the court views the evidence and draws

inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625

F.3d 1279, 1283 (10th Cir. 2010).  "An issue of fact is 'genuine' 'if the evidence is such that a

reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if

under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.*

(quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of

law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v.

Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the

moving party "'need not negate the non-movant's claim, but need only point to an absence of

evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO,

Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its

pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those

dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "[T]he *Martinez* report is part of the summary judgment record, and absent valid challenge, may be treated as providing uncontroverted facts." *Hartz*, 687 F. App'x at 785.

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### 3. Discussion

Defendants seek summary judgment against plaintiff's individual capacity claims against all defendants. They provide several arguments supporting their motion. The court addresses each argument, in turn, below.

#### (a) Defendants Burris, Nickels, and Schnurr never personally participated in the alleged constitutional violations.

To prevail on his § 1983 claims, "plaintiff must show the defendant personally participated in the alleged violations[.]" *Jenkins*, 81 F.3d at 994. "[C]onclusory allegations are not sufficient to state a constitutional violation." *Id.* (citing *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981)). To attach liability to a supervisor, plaintiff must show "'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Id.* at 995 (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)). Here, plaintiff can satisfy this standard if he shows defendants "personally directed" the alleged constitutional violations or

"had actual knowledge" of the violations and allowed them to continue.  *Id.* (citing *Woodward*, 977 F.2d at 1400).

Plaintiff's Amended Complaint alleges Mr. Burris, Mr. Nickels, and Mr. Schnurr violated his constitutional rights "by failing to act to stop the opening and reading of [his] incoming legal correspondence from his attorneys."[14]  Doc. 10 at 17.  He alleges these defendants "witnessed and knew that [ ] plaintiff[']s legal mail was being opened and read but did nothing to stop it." *Id.*  And, he alleges, Mr. Schnurr directed other defendants to open and read plaintiff's legal mail.  *Id.* at 2, 6.

But the summary judgment record doesn't support plaintiff's claims.  Neither Mr. Burris, Mr. Nickels, nor Mr. Schnurr had personal involvement in opening plaintiff's mail.  *See* Doc. 20-3 at 1 (Burris Aff. ¶ 3) ("I didn't have any direct or indirect involvement with any aspect of the opening of [plaintiff's] legal mail."); Doc. 20-7 at 1 (Schnurr Aff. ¶ 5) ("No one called me about [plaintiff's legal mail being opened].  No one sent me the mail to read nor did I tell anyone to do so."); Doc. 20-8 at 1 (Nickels Aff. ¶ 8) ("I had nothing to do with the training the store room staff received regarding legal mail or anything else.").  Nor does the record establish any of these defendants supervised another defendant while plaintiff's mail was opened or personally directed them to do so.  In fact, the summary judgment record establishes as uncontroverted fact that Mr. Burris, Mr. Nickels, and Mr. Schnurr were not notified about plaintiff's mail being opened until after plaintiff filed a grievance.  *See* Doc. 20-3 at 1–2 (Burris Aff. ¶¶ 5–6) (noting Mr. Burris reviewed plaintiff's appeal to the secretary of corrections); Doc. 20-7 at 1 (Schnurr Aff. ¶¶ 5–7) (noting Mr. Schnurr "knew nothing about the three events alleged by plaintiff" until he received

---

[14]     The Amended Complaint also alleges that "John Doe mailroom supervisor" and "Richard Roe storeroom supervisor" violated his constitutional rights.  Doc. 10 at 17.  But, as explained above, the court already has dismissed John Doe and Richard Roe as defendants.  *See* Doc. 17.

plaintiff's grievance); Doc. 20-8 at 1 (Nickels Aff. ¶ 5) (noting Mr. Nickels learned about plaintiff's allegations after he received plaintiff's grievance). Thus, the record lacks evidence connecting any violation of plaintiff's rights to Mr. Burris, Mr. Nickels, or Mr. Schnurr's alleged failure to act.

Also, the Amended Complaint alleges merely that Mr. Burris and Mr. Nickels responded to plaintiff's grievances but didn't fix the problem. *See, e.g.*, Doc. 10 at 1–6 (Am. Compl. ¶ 2) (alleging Mr. Burns responded to plaintiff's grievance appeal); *id.* at 13 (Am. Compl. ¶ 27) (alleging Mr. Nickels responded to plaintiff's grievance); *id.* (Am. Compl. ¶¶ 30–31) (alleging plaintiff forwarded his grievance to the Secretary of Corrections). An official's "mere response and denial of [plaintiff's] grievance are insufficient to establish the requisite personal participation under § 1983." *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)). Here, the summary judgment record does not establish Mr. Burris and Mr. Nickels did anything other than respond to plaintiff's grievances. Indeed, the summary judgment evidence shows these defendants believed the problem was being addressed. In contrast, plaintiff has adduced no admissible evidence to support plaintiff's allegation that they allowed the violations to continue. *See* Doc. 20-3 at 1–2 (Burris Aff. ¶¶ 3–7) (describing Mr. Burris's response to plaintiff's grievances and that the Unit Team and warden reported the matter had been addressed); Doc. 20-8 at 1 (Nickels Aff. ¶ 8) ("I did investigate the first grievance and responded to it in good faith that the problem had been addressed.").

Plaintiff's § 1983 claims against these defendants fail as a matter of law. The court thus grants summary judgment on plaintiff's failure to supervise claims.

**(b) Plaintiff can't establish a constitutional violation.**

Plaintiff also asserts Mr. Hamby, Mr. Schnurr, Ms. Keen, and Ms. Zolman violated his constitutional rights when they opened three pieces of his legal mail and read the contents outside of his presence. *See generally* Doc. 10. In support of their summary judgment motion, defendants contend, plaintiff cannot state a constitutional violation because there's no evidence to support a finding that any defendant acted with "improper motive." Doc. 29 at 12.

As discussed above, to state a claim under § 1983, plaintiff must allege that: (1) "some person has deprived him of a federal right," and (2) "the person who has deprived him of that right acted under color of state or territorial law." *Gomez*, 446 U.S. at 640 (citations omitted). Plaintiff's Amended Complaint alleges defendants, acting under color of state law, intentionally opened and read his legal mail on three different dates.

Plaintiff contends defendants violated his First and Fourteenth Amendment rights when they opened his legal mail outside his presence. As noted above, the Supreme Court has recognized that "the First Amendment entitles a prisoner to receive and send mail . . . ." *Hudson*, 486 U.S. at 547 (Stevens, J., concurring). Similarly, the Fourteenth Amendment entitles a prisoner to reasonable access to the courts. *Id.* And "[i]t is settled that an inmate's legal mail may be opened by prison officials only in the presence of the inmate." *Bledsoe*, 814 F. Supp. at 59. But isolated opening of a prisoner's legal mail can't support a claim for a constitutional violation unless there is "evidence of improper motive or resulting interference with [plaintiff's] right to counsel or access to the courts[.]" *Maschner*, 899 F.2d at 944; *see also Haston*, 799 F. Supp. at 1132 (citing *Maschner* and concluding two incidents where prison employees opened plaintiff's legal mail didn't rise to a "pattern" of improper behavior absent a showing of improper motive or interference with plaintiff's right to counsel or court access); *Bagguley*, 893

F. Supp. at 972–73 (finding that "three envelopes [that] were opened in violation of the applicable federal regulations . . . [did] not rise to the level of a constitutional violation").

Plaintiff alleges that Mr. Hamby, Mr. Schnurr, Ms. Keen, and Ms. Zolman opened and read plaintiff's legal mail or directed others to open and read his mail on April 5, April 10, and July 12, 2017. Doc. 10 at 15–17. But plaintiff has adduced no admissible evidence to support plaintiff's § 1983 claims. The summary judgment record shows plaintiff's legal correspondence arrived in unusual packaging at the HCF storeroom on three different days in 2017. Each time his legal mail was opened, a different storeroom employee received and signed for the packages. Because HCF trained storeroom employees to open all packages and inspect them for contraband, storeroom employees opened plaintiff's packages as a routine matter. But, when each employee discovered plaintiff's package contained legal documents, each employee promptly returned the contents to the packaging and forwarded plaintiff's correspondence to the mailroom for processing.

It is true that HCF policy required employees to open legal mail only in the prisoner's presence. But policy violations by storeroom employees not used to receiving legal mail does not amount to a constitutional violation. *See Williams v. Miller*, 696 F. App'x 862, 869–70 (10th Cir. 2017) ("Merely showing that [defendants] may have violated prison policy is not enough [to establish a constitutional violation]." (citing *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993))). In sum, plaintiff has adduced no evidence that any defendant opened plaintiff's legal mail with "improper motive." *Maschner*, 899 F.2d at 944. Nor does the evidence show opening plaintiff's mail interfered with plaintiff's right to counsel or his access to the courts. *Id.*

Perhaps, trying to show improper motive, plaintiff's Amended Complaint alleges that Mr. Schnurr directed various employees to read plaintiff's mail and relay its contents back to him.

Doc. 10 at 10 (Am. Compl. ¶ 8). But the record contains no admissible evidence to support plaintiff's allegations. Instead, the record shows Mr. Schnurr wasn't aware of plaintiff's claims until he received one of plaintiff's grievances. Doc. 20-7 at 1 (Schnurr Aff. ¶¶ 5–6). Other affidavits confirm Mr. Schnurr's testimony. *See* Doc. 20-4 at 1 (Hamby Aff. ¶ 6) ("I did not call Warden Schnurr on April 10, 2017, about receiving the mail or anything about the content of the mail."); Doc. 20-6 at 1 (Zolman Aff. ¶ 5) ("I did not call Warden Schnurr to discuss the matter."). In short, no admissible evidence in the record could support an inference that any of these defendants acted with an "improper motive."

Viewing the evidence in the light most favorable to plaintiff, the evidence shows—at best—that defendants handled his legal mail negligently. But negligence can't carry the day. Plaintiff can't predicate his § 1983 claims on negligence because the "liability under § 1983 must be predicated upon a '*deliberate*' deprivation of constitutional rights by the defendant." *Woodward*, 977 F.2d at 1399.

Plaintiff directs the court to no admissible evidence to support his claims. Thus, the summary judgment facts, even when viewed in the light most favorable to plaintiff, the court cannot find a genuine issue of material fact for plaintiff's § 1983 claims. So, the court grants summary judgment against plaintiff's § 1983 claims against Mr. Hamby, Mr. Schnurr, Ms. Keen, and Ms. Zolman alleging First and Fourteenth Amendment violations.[15]

---

[15]     Defendants alternatively move for summary judgment based on qualified immunity to the extent their actions violated plaintiff's constitutional rights. Doc. 29 at 15–16. To establish a § 1983 claim against an individual defendant asserting a qualified immunity defense, plaintiff must show facts that "make out a violation of a constitutional right," and demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citation omitted). A court has discretion to determine "which of the two prongs of the qualified immunity analysis" it should address first "in light of the circumstances in the particular case at hand." *Id.* at 236. But the court must grant qualified immunity unless the plaintiff shoulders his "heavy burden" to make both prongs of this showing. *Stevenson v. Cordova*, 733 F. App'x 939, 942 (10th Cir. 2018).

### C.  Summary

For all these reasons, the court grants defendants' motion.  The court dismisses plaintiff's official capacity claims against defendants Douglas Burris, Michael Hamby, Patti Keen, Mike Nickels, Dan Schnurr, and Jennifer Zolman because it lacks subject matter jurisdiction to decide those claims.  And, because the summary judgment facts viewed in plaintiff's favor present no triable issue on all of plaintiff's remaining individual capacity § 1983 claims against defendants Douglas Burris, Michael Hamby, Patti Keen, Mike Nickels, Dan Schnurr, and Jennifer Zolman, the court grants their Motion for Summary Judgment.

## IV.   Conclusion

In sum, the court denies plaintiff's Motion to Amend (Doc. 36) because its proposed claims are futile.  The court grants defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 28) because it lacks subject matter jurisdiction over plaintiff's official capacity claims, and, the summary judgment record presents no triable issue on plaintiff's remaining claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Amend (Doc. 32) is denied because it is moot.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion to Amend (Doc. 36) is denied.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 28) is granted.  Plaintiff's official capacity claims are

---

For reasons explained above, plaintiff hasn't overcome this defense.  Isolated incidents of opening a prisoner's legal mail are insufficient to state a constitutional violation unless there is "evidence of improper motive or resulting interference with [plaintiff's] right to counsel or access to the courts[.]"  *Maschner*, 899 F.2d at 944.  And, the summary judgment facts present no triable issue whether any defendant violated plaintiff's constitutional rights.  Given the applicable substantive law, plaintiff can't show a genuine issue of a constitutional violation.  Defendants thus are entitled to qualified immunity as well.

dismissed without prejudice.  The court grants summary judgment on all other claims.  The Clerk is directed to enter judgment for defendants consistent with this Order and close this case.

**IT IS SO ORDERED.**

**Dated this 22nd day of September, 2020, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**